United States District Court
Southern District of Texas

**ENTERED**

February 28, 2019

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | **Cr. No. 2:16-204-2** |
| v. | § | **(C.A. No. 2:17- 390)** |
| | § | |
| EVA MENDEZ-SANDOVAL, | § | |
| Defendant/Movant. | § | |

### MEMORANDUM OPINION AND ORDER

Defendant/Movant Eva Mendez-Sandoval's filed a Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (D.E. 73). Pending before the Court is the United States' Motion for Summary Judgment (D.E. 79), to which Mendez-Sandoval replied (D.E. 80).

## I.  BACKGROUND

Mendez-Sandoval, her husband Carlos Sanchez-Lopez, and their two-year-old daughter approached the Sarita, Texas Border Patrol Checkpoint in February 2016. Before agents began the immigration inspection, a drug canine pulled towards the vehicle and alerted. During the immigration inspection, the agent ran his canine around the vehicle and the dog alerted. The agent also noticed that the couple had no luggage and only a few diapers for their reported multiple day trip to Richmond, Texas. Mendez-Sandoval and her family were asked to go to secondary for further inspection. There, the agent noticed that the console of the vehicle appeared to have been tampered with. Agents discovered an aftermarket compartment below the console with six bags of cocaine inside. The value of the cocaine was approximately $475,000. Mendez-Sandoval and Sanchez-Lopez were arrested.

1

Mendez-Sandoval and her husband were charged in a two count indictment with conspiracy and to possession with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) and of 18 U.S.C. § 2. Mendez-Sandoval was convicted on both counts after a jury trial in May 2016.

The Probation Department prepared a Presentence Investigation Report (PSR). Mendez-Sandoval's base offense level of 30 was calculated based upon the quantity of cocaine involved (5.94 kilograms net weight). Her offense level was enhanced by two for obstruction of justice at trial. She had no previous criminal history. Mendez-Sandoval's sentencing guideline range was 121 to 151 months' imprisonment, with a mandatory minimum sentence of ten years.

Sentencing was held in August 2016. Counsel argued for the minimum mandatory sentence. The Court adopted the PSR as written and imposed a sentence of 121 months' imprisonment. Mendez-Sandoval's conviction and sentence were affirmed on July 13, 2017. The Clerk received her present motion on December 22, 2017. It is timely.

## II.  MOVANT'S CLAIMS

Mendez-Sandoval raises the following grounds of ineffective assistance of counsel: 1) trial counsel failed to file a motion to suppress the cocaine, and 2) appellate counsel failed to raise trial counsel's failure to file a motion to suppress on direct appeal. Mendez-Sandoval also raises the related issue that the cocaine was seized in violation of her Fourth Amendment rights. Mendez-Sandoval's reply further develops her argument that the use of canines at immigration checkpoints violates her Fourth Amendment rights.

The Government argues that there was no Fourth Amendment violation and therefore no ineffective assistance of counsel. The Government seeks summary judgment on Mendez-Sandoval's claims.

2

## III.  ANALYSIS

### A.  28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B.  Fourth Amendment Violation

Mendez-Sandoval argues that that the use of drug sniffing dogs to interdict illegal narcotics has turned the Border Patrol Checkpoints into impermissible narcotics checkpoints in violation of *United States v. Machuca-Barrera*, 261 F.3d 425, 431 (5th Cir. 2000). She further argues that she should not have been detained longer than her immigration inspection.

Before Mendez-Sandoval and her family vehicle approached the checkpoint, the canine officer was standing between the two lanes of traffic at the checkpoint with his dog at the entry to the checkpoint lanes.[1] As the Mendez-Sandoval car approached, the dog pulled the agent towards the vehicle and alerted *before* the immigration inspection began. D.E. 66, pp. 98-99. At that point, the agent had reasonable suspicion to detain Mendez-Sandoval for further

---

1.  A dog sniff during a lawful traffic stop does not generally implicate legitimate privacy interests. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (holding dog sniff did not prolong lawful detention for traffic violation did not violate Fourth Amendment and supported warrantless search of vehicle that discovered marijuana).

investigation. The agent testified that the dog is able to detect the scents of both persons and illegal drugs. *Id.*, p. 96.

Because the original alert gave the agent reasonable suspicion to further investigate, the agent asked questions and asked for consent to look in the trunk of the car, which was granted. The absence of luggage for a three or four day trip and inadequate supplies for a young child further supported the agent's suspicions. At that point, the agent sent the car to secondary. At secondary, agents noticed probable tampering with the console, which, combined with the other evidence, supported probable cause to believe drugs were hidden in the vehicle. *Machuca-Barrera*, 261 F.3d at 435; *see also United States v. Clayton*, 374 Fed. App'x 497, 499 (5th Cir. Mar. 12, 2010) (per curiam) (unpublished) ("the canine's alert itself established sufficient probable cause to justify the agents' search of the vehicle"); *United States v. Ventura*, 447 F.3d 375, 378 (5th Cir. 2006); *United States v. Garcia-Garcia*, 319 F.3d 726, 730 (5th Cir. 2003) (The use of drug-sniffing dogs at immigration stops is permissible so long as such use does not lengthen the stop beyond the time necessary to verify the immigration status of a vehicle's passengers.).

Because the agent had reasonable suspicion to increase the length of the stop based upon the dog's alert *before* completion of the immigration questions, and he developed additional suspicion that bloomed into probable cause, there was no Fourth Amendment violation. The Court finds no violation of Mendez-Sandoval's Fourth Amendment rights.

### C.   Claims of Ineffective Assistance of Counsel

#### 1.   Standard

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States,* 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

#### 2.   Failure to file a motion to suppress

Mendez-Sandoval argues that counsel's failure to file a motion to suppress constituted ineffective assistance of counsel. When trial counsel's failure to raise a Fourth Amendment claim is at issue, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the

excludable evidence in order to demonstrate actual prejudice.'" *United States v. Dowling*, 458 Fed. App'x. 396, 397 (5th Cir. Jan. 13, 2012) (per curiam) (unpublished) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). As the Court discussed in Part III(B), *supra*, no warrant was required and the search was supported by probable cause. Because Mendez-Sandoval did not establish a violation of her Fourth Amendment rights, she has not established that counsel's performance fell below reasonable professional standards.

### 3. Failure to raise ineffective assistance of trial counsel on direct appeal

Mendez-Sandoval argues that her appellate counsel was ineffective on the ground that he failed to raise trial counsel's failure to file a motion to suppress. Because Mendez-Sandoval did not have grounds for a motion to suppress, this issue also fails.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Mendez-Sandoval has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 RULES.

A Certificate of Appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This

standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

Based on the above standards, the Court concludes that Mendez-Sandoval is not entitled to a COA on any of her claims. That is, reasonable jurists could not debate the Court's resolution of her claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V.   CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment (D.E. 79) is **GRANTED**; Mendez-Sandoval's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 73) is **DENIED**; and she is also denied a Certificate of Appealability.

It is so **ORDERED** this 20th day of February, 2019.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE